IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

AUG 1 2 2005

Michael N. Milby, Clerk

| | |
|---|---|
| FG HEMISPHERE ASSOCIATES, L.L.C. | § |
| Plaintiff, | § |
| v. | § |
| RÉPUBLIQUE DU CONGO, | § |
| Defendant, | § |
| And | § |
| CMS OIL AND GAS COMPANY, | § |
| CMS OIL AND GAS (INTERNATIONAL) | § |
| COMPANY, | § |
| CMS NOMECO INTERNATIONAL CONGO | § |
| HOLDINGS, INC., | § |
| CMS NOMECO CONGO, INC., | § |
| CMS OIL AND GAS (HOLDINGS), LTD., | § |
| CMS OIL AND GAS (INTERNATIONAL) LTD., | § |
| CMS NOMECO CONGO LDC, | § |
| CMS OIL AND GAS (CONGO) LTD., | § |
| CMS OIL AND GAS (SERVICES) COMPANY, | § |
| NUEVO ENERGY COMPANY, | § |
| THE NUEVO CONGO COMPANY, | § |
| THE CONGO HOLDING COMPANY, | § |
| NUEVO CONGO, LTD., | § |
| NUEVO INTERNATIONAL INC., | § |
| NUEVO INTERNATIONAL HOLDINGS, LTD., | § |
| PERENCO INC., | § |
| PERENCO OIL AND GAS (INTERNATIONAL) | § |
| COMPANY, | § |
| PERENCO INTERNATIONAL (CONGO) INC., | § |
| PERENCO OIL AND GAS (SERVICES) | § |
| COMPANY and LANKAN INC. | § |
| Garnishees. | |

CIVIL ACTION No.: H-02-4261

## EMERGENCY OPPOSED SECOND APPLICATION TO ISSUE WRITS OF GARNISHMENT WITH RESPECT TO SOCIÉTÉ NATIONALE DES PÉTROLES DU CONGO

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff FG Hemisphere Associates, L.L.C. ("FG Hemisphere"), by and

through its undersigned counsel, and files this Emergency Opposed Second Application to Issue

Writs of Garnishment With Respect to Société Nationale des Pétroles du Congo ("SNPC")

against the Garnishees CMS Nomeco Congo Inc. ("CMS Nomeco"), The Nuevo Congo Company ("NCC"), and Nuevo Congo Ltd. ("NCL" and together with NCC, the "Nuevo Entities"). As hereinafter set out, this Court has previously issued Garnishment Writs applicable to royalty and other obligations owed by the Garnishees to the République du Congo ("Congo") and SNPC, the national oil company owned and controlled by Congo. By this application, FG Hemisphere seeks additional Garnishment Writs applicable to the obligations owed by the Garnishees to SNPC.

## I.    Need for Additional Writs of Garnishment Against SNPC

On July 27, 2005, the Garnishees gave notice to the Court and to all parties that SNPC is scheduled to take a lifting of crude oil in satisfaction of obligations of the Garnishees to the Congo and SNPC on August 30-31, 2005 (the "August Lifting"). *See* Docket No. 233. FG Hemisphere believes that it has already garnished any obligations to SNPC represented by or to be satisfied pursuant to the August Lifting by virtue of the writs of garnishment issued in favor of FG Hemisphere and served in December 2004 (Docket #148, #149, and #150) (the "December Writs"), because such writs not only garnished any *indebtedness* that accrued through the applicable periods, but also the underlying *intangible effects*, being the contractual rights of SNPC under a Joint Operating Agreement and other agreements related to the Convention for the production of oil in the Republic of Congo dated May 25, 1979 (the "Convention"). *See* Convention, attached as Exhibit A to the Declaration of Dillon Ferguson attached hereto ("Ferguson Decl.").

However, in the event this Court determines that the December Writs did not attach to the intangible effects and thus, to the August Lifting, FG Hemisphere will require additional writs of garnishment. Therefore, although FG Hemisphere believes it has validly garnished the intangible effects of SNPC held by the Garnishees (which would include the August Lifting), out

2

of an abundance of caution, FG Hemisphere seeks additional writs of garnishment in order to capture the indebtedness or obligations actually accruing through August and to be satisfied by the August Lifting.

FG Hemisphere is seeking the issuance of the writs on an emergency basis not only because a lifting of oil is scheduled to take place on August 30-31, 2005, but because on July 18, 2005, the Garnishees gave notice that they intend to sell their interests in the Convention as soon as August 17, 2005.  (Docket No. 227).  Assuming that the October Writs and December Writs did not attach to the intangible effects, FG Hemisphere requires that writs of garnishment be issued and served prior to **August 17, 2005** in order to capture the indebtedness or obligations actually accruing through August (or at a minimum through the date of sale) and to be satisfied by the August Lifting.

## II.    Summary of the Argument[1]

Congo is indebted to FG Hemisphere in the amount of $151,952,486.23 and a New York judgment for that amount has been domesticated in this Court.  Congo has stipulated that SNPC is the same entity as the Congo for purposes of this proceeding and Congo has waived immunity under the Foreign Sovereign Immunities Act for execution upon its property to satisfy FG Hemisphere's judgment.  The essential issue to be resolved in this application is whether any of SNPC's assets that are in the possession of Garnishees satisfy the remaining Foreign Sovereign Immunities Act criteria for satisfaction of FG Hemisphere's judgment: those criteria are whether SNPC's property (1) is in the United States and (2) is used for commercial activity in the United

---

[1]    References to specific documents and portions of the record in this Court are omitted from this summary but references to each of the points included in this summary are contained in the detailed discussion incorporated in this application.

States. *See Af-Cap, Inc. v. The Republic of Congo*, 383 F.3d 361 (5th Cir. 2004), *as clarified by order on rehearing*, 389 F.3d 503 (5th Cir. 2004), *cert. denied*, 125 S.Ct. 1735 (2005).

This Court has already addressed this issue and concluded that ***SNPC has assets located in the United States that have been used for commercial purposes in the United States***. *See* Order dated December 23, 2004, Ferguson Decl. Ex. B.  The facts relied on by the Court in its prior findings remain the same and are equally applicable to the current Application.  Based on these facts, which are set forth below, and this Court's prior findings, the obligations owed by the Garnishees to SNPC are amenable to garnishment under the criteria established by Section 1610 of the Foreign Sovereign Immunities Act ("FSIA") for satisfaction of FG Hemisphere's judgment and FG Hemisphere is entitled to garnishment writs covering the obligations owed by the Garnishees to Congo and to SNPC.

## III.    Background

### A.    *The New York Judgment*

On September 26, 2001, FG Hemisphere filed suit against the Congo in the United States District Court for the Southern District of New York (the "New York Court") to enforce a loan agreement.  Despite being on notice of the suit, the Congo ignored every order issued by the New York Court and every communication by FG Hemisphere.  On July 24, 2002, the New York Court entered a default judgment against the Congo in the amount of $151,952,486.23.  *See* Judgment, Ferguson Decl. Ex. C.

On September 5, 2002, the New York Court issued a general order pursuant to section 1610(c) of the FSIA permitting FG Hemisphere to execute on the Judgment against any assets, properties or revenues of the Congo.  The New York Court found that a reasonable period of time had passed since the Congo was given notice of the judgment and that the Congo had "expressly and irrevocably waived any immunity of itself, of any of its assets, revenues and

4

properties, and of any assets, revenues and properties of any central bank or monetary authority of the Congo, from execution or attachment in aid of execution on the grounds of sovereignty or otherwise." *See* Order Granting Motion to Execute on Judgment, dated September 5, 2002, at 1, Ferguson Decl. Ex. D.

### B.    The Commercial Agreement Between The Congo and The Garnishees

In 1979, the Congo issued a permit to drill for offshore oil and entered into the Convention with two U.S. companies, one Canadian company and one Congolese company. *See* Convention, Ferguson Decl. Ex. A. Under the Convention, the Congo receives millions of dollars in revenues every year. CMS Nomeco and the Nuevo Entities are successors in interest to certain of the original parties to the Convention, and, along with SNPC, are the current owners of working interests in the Convention (CMS Nomeco and the Nuevo Entities being herein called "Garnishees" and together with SNPC being herein called "JOA Participants"). *See* Garnishees' Motion to Dismiss Writs of Garnishment dated October 26, 2004 ("Garnishees' Motion") at 2, Ferguson Decl. Ex. E. CMS Nomeco is the current operator of the Marine 1 permit under the Convention. *Id.* The 1979 Convention creates a property right under which the JOA Participants must pay a royalty to the Congo, in cash or in kind, based on the value of the hydrocarbons extracted. *See* 1979 Convention, Ferguson Decl. Ex. A. In addition, other agreements relating to the implementation of the 1979 Convention create property rights of SNPC, which are the subject of this application. *See infra*, at 11.

### C.    Proceedings in this Court

This Court has registered a Judgment in favor of FG Hemisphere and against the Congo in the amount of $151,952,486.23. This Judgment remains wholly unsatisfied despite FG Hemisphere's efforts to enforce the Court's Judgment.

On October 5, 2004, this Court issued an order authorizing issuance of Writs of Garnishment to the Garnishees applicable to indebtedness owed to, or assets held for, the Congo. *See* Order dated Oct. 5, 2004, Ferguson Decl. Ex. F.  On October 8, 2004, this Court physically signed Writs of Garnishment addressed to the Garnishees, applicable to indebtedness owed to, or assets held for, the Congo (the "October Writs").  *See* Writs of Garnishment dated Oct. 8, 2004, Ferguson Decl. Ex. G.  Upon FG Hemisphere's motion to clarify the October 5, 2004 Order, this Court issued a revised Order on October 22, 2004, which clarifies and restates the October 5, 2004. *See* Order dated October 22, 2004, Ferguson Dec. Ex. H.  The October Writs were served upon the Garnishees.

The October Writs were not specifically addressed to the obligations that are owed by the Garnishees to SNPC but such obligations were a significant portion of the subject of FG Hemisphere's February 28, 2003 Application for Writs of Garnishment and were specifically preserved in FG Hemisphere's prior Emergency Application to Issue Writs of Garnishment filed under seal in this Court on September 23, 2004.  *See* FG Hemisphere's Emergency Application dated September 23, 2004, Ferguson Decl. Ex. I.

After an additional application was filed with respect to SNPC, this Court issued an order authorizing issuance of the December Writs to the Garnishees applicable to indebtedness owed to, or assets held for, the Congo and SNPC.  *See* Order dated December 23, 2004, Ferguson Decl. Ex. B. On December 23, 2004, this Court physically signed the December Writs addressed to the Garnishees, applicable to indebtedness owed to, or assets held for, the Congo and SNPC. *See* December Writs, Docket #148, #149, and #150.  The December Writs were then properly served upon the Garnishees.

6

**D.     The SNPC Stipulation**

By Confidential Stipulation entered under seal in the New York Court on June 26, 2003

(the "Stipulation"), and filed under seal in this Court by order of this Court issued on September

2, 2003, FG Hemisphere and the Congo stipulated and agreed that:

> [W]ith respect to any proceeding in the United States to enforce the judgment in
> the [New York] action..., to the extent that FG Hemisphere...identifies property
> which FG Hemisphere contends is property in the United States in which Société
> Nationale de Petrol du Congo ("SNPC") has a right or interest, Congo will not
> take the position that such property is not property of Congo for purposes of 28
> USC § 1610(a)(1).

*See* Stipulation dated Jun. 26, 2003, Ferguson Decl. Ex. J.

The FSIA and the Stipulation dictate that for purposes of this proceeding, SNPC and

Congo are to be treated as one and the same entity.  In the loan agreement underlying Congo's

indebtedness ("Loan Agreement"), the Congo executed a very broad waiver of its immunity not

only from entry of judgment, but against seizure of any of its property, wherever located,

whatever its form and whatever its use or intended use.  *See* Loan Agreement, Ferguson Decl.

Ex. K.  This Court has previously determined that the Congo irrevocably waived immunity with

respect to the obligations of the Loan Agreement and that the waiver extends to execution upon

any assets, revenues and properties that belong to the Congo.  *See* Order dated October 22, 2004,

Ferguson Decl. Ex. H.  As a result of that Order and the provisions of the Stipulation, the

protections afforded under the FSIA have also been waived with respect to the assets of SNPC.

It is FG Hemisphere's position, and this Court has previously held, that the Garnishees

owe obligations to SNPC (and therefore to Congo by virtue of the Stipulation) and that such

obligations are not immune from execution under the provisions of the FSIA.  *See* Joint

Discovery/Case Management Plan under Federal Rule of Civil Procedure 26(f) dated February

21, 2003, Ferguson Decl. Ex. L and Ex. B. The nature and extent of the Garnishees' obligations to SNPC are described in the next section of this application.

## IV.    SNPC's Working Interest

### A.    *Creation of the Interests.*

On or about May 25, 1979, the Congo entered into the 1979 Convention with the Garnishees' predecessors in interest. *See* Ferguson Decl. Ex. A. In connection with the 1979 Convention, on May 25, 1979, Societe Nationale de Recherches et d'Exploration Petrolieres "Hydro Congo" (herein called "Hydro Congo") entered into a Joint Operating Agreement (the "JOA") with the Garnishees' predecessors in interest. *See* Joint Operating Agreement, Ferguson Decl. Ex. M. According to the terms of the JOA, Hydro Congo retained a 50% working interest in the area identified in the 1979 Convention and the Garnishees' predecessors in interest received the remaining 50% working interest. *Id.* On April 9, 1999, Congo issued the Ministerial Decree No. 99-51, pursuant to which, all the petroleum assets and direct and indirect taxes of whatever kind, formerly held by Hydro-Congo, in all activities relating to the exploration, exploitation, processing and transformation of hydrocarbons and derivative or related substances, were transferred to SNPC. *See* Ministerial Decree No. 99-51, Ferguson Decl. Ex. N. As a result of the transfer from Hydro Congo to SNPC and a series of transfers from the Garnishees' predecessors in interest, the entities currently holding the participating interests under the JOA are: (a) CMS Nomeco with a 25% participating interest; (b) NCC with a 18.75% participating interest; (c) NCL with a 6.25% participating; and (d) SNPC with a 50% participating interest. *See* Garnishees' Responses to FG Hemisphere's Interrogatories dated December 1, 2003, at ¶ 11, p. 17-18, Ferguson Decl. Ex. O.

8

**B.    Financing of SNPC Expenses – the Advance Account**

Under article 9 of the JOA, SNPC is not directly responsible for payment of any of the expenses of the JOA. *See* Joint Operating Agreement, Ferguson Decl. Ex. M. More specifically, article 9 of the JOA provides that the entirety of SNPC's share of the expenses relating to the implementation of the JOA, including SNPC's royalty obligation to the Congo, shall be financed by the Garnishees. *Id.* These advances made by the Garnishees for the benefit of SNPC to finance SNPC's share of the JOA expenses are allocated among the Garnishees proportionately and entered into the Advance Account. *Id.; see also* Advance Account, Ferguson Decl. Ex. 1. Repayment of this financing is accomplished by, and limited exclusively to, up to 75% of SNPC's 50% participating interest in the following manner:

- When the oil is reduced to possession at the surface, it is owned by each of the JOA Participants in the proportion of their respective participating interests under the JOA. *See* JOA Articles 4.11, 9.02, 9.03, 10.1, and 10.3, Ferguson Decl. Ex. M; *See* Lifting Agreement Article 1.3, Ferguson Decl. Ex. P.

- After production, the oil is then transported by a pipeline to the Conkouati for processing and storage. *See* Garnishees' Motion at 3.

- Under article 9.03 of the JOA, CMS is authorized "to allocate ... among [the Garnishees]" up to 75% of SNPC's 50% participating interest in the oil, and the proceeds from the sale of such oil are used to reimburse the financing that SNPC receives from the Garnishees in connection with SNPC's share of the JOA expenses. *See* JOA Article 9.03, Ferguson Decl. Ex. M.

- The portion of SNPC's oil that is allocated to reimbursement of advances of its JOA expenses is treated as having been lifted by SNPC but, for accounting purposes, the value of the allocated portion of SNPC's oil is treated as reimbursement of current production expenses and the Advance Account. *See* Lifting Agreement Articles 1.12 and 1.13, Ferguson Decl. Ex. P.

- The proceeds from the sales of the oil applicable to the portion of SNPC's participating interest allocated for the Advance Account have been treated by CMS as reimbursement of expenses and repayment of previous advances, which CMS Nomeco values at the market value of the production sold. *See* JOA Article 9.05, Ferguson Decl. Ex. M.

- The remaining 25% of SNPC's 50% participating interest is allocated to SNPC. *See* JOA Article 9, Ferguson Decl. Ex. M.

HOU:2485961.1

- If and when the Advance Account is fully reimbursed, the Garnishees would cease making advances for SNPC's share of expenses and SNPC would be entitled to receive its full 50% share of production and would be required to pay its 50% share of applicable expenses. *See* JOA Article 9.04, Ferguson Decl. Ex. M.

In essence, the Advance Accounts function like a revolving loan facility. Under the JOA, the Advance Account also bears 6% interest covering the financing of SNPC's share of the JOA expenses. *See* JOA Article 9, Ferguson Decl. Ex. M. As a security for, and to repay this financing, SNPC has authorized CMS Nomeco to allocate among the Garnishees 75% of SNPC's participating interest in the Yombo Field. *See* JOA Article 9, Ferguson Decl. Ex. M. Moreover, for tax and accounting purposes, CMS Nomeco has treated this arrangement as a revolving loan facility that is being periodically repaid through the sale – by CMS Nomeco on SNPC's behalf – of the oil attributed to the 75% of SNPC's participating interest allocation from every lifting made by CMS Nomeco on behalf of the JOA Participants. The proceeds of these sales are applied by CMS Nomeco as repayment of the loan. *See* Ferguson Decl. Ex. Q.

## C.    *Lifting of Oil/Taking in Kind – the Over/Under Account*

In September 1999, by Ministerial Decree No. 99-171, Congo transferred to SNPC all of the "assets, rights and participating interests held directly by the Government on the permits and petroleum contracts", including its Mining Royalty rights in Yombo. *See* Ministerial Decree 99-171, Ferguson Decl. Ex. R. Around the same time, SNPC notified CMS Nomeco that it would market all of its participating interest in the Yombo Field production itself[2] and that it would also receive and market the royalty owed to the Congo under the 1979 Convention. *See* Ferguson Decl. Ex. S. In order to satisfy SNPC's wishes, the Garnishees agreed with SNPC to the following procedure for SNPC to obtain and market the oil attributed to its participating interest

---

[2] Upon information and belief, prior to this notification, the oil attributable to SNPC's (Hydro Congo's) interest was purchased by Garnishees under Section 10.12 of the JOA and SNPC received payment in cash.

10

and the royalty owed to the Congo:[3]  Beginning from Lifting 82, which occurred in November 1999, whenever a lifting occurs, CMS Nomeco sells the oil and then calculates the effect of the liftings on the over/under delivered positions of SNPC and the Congo, on a barrel basis with respect to both the royalty owed to the Congo and SNPC's Participating Interest.  *See* Garnishees' Motion at 3.  The amount reached through these calculations, converted to barrels of oil as above-stated, is credited into a so-called "Over/Under" Account.  *Id.; see also* Over/Under Account, Ferguson Decl. Ex. 2.  Once the balance in the Imbalance Account exceeds 275,000 barrels in SNPC's favor, CMS Nomeco notifies SNPC that it can take a lifting (herein called "SNPC Lifting").  *Id.*

### D.    Lifting Costs – The Over/Under Account

Section 5.2 of the Amendment to Lifting Agreement deals with the lifting costs in connection with the SNPC liftings.  Pursuant to that provision, CMS Nomeco pays the lifting costs associated with SNPC liftings.  "The debt from SNPC to the [Garnishees for the lifting costs] will be repaid out of SNPC's share of the production of crude oil.  At the next lifting succeeding a SNPC lifting, the [Garnishees] will lift and market this number of barrels at the contract price sufficient to reimburse their claim from SNPC."

Section 5.3 states that "[t]he SNPC may elect to pay its own lifting costs and make its own arrangements for tugs, personnel, mooring or piloting, governmental inspectors, etc. by giving 30 days written notice … to the Operator."

---

[3]   The parties' agreement was first documented through an exchange of letters in 1999, and later in a formal "Amendment to Lifting Agreement" finally executed in 2001.  *See* Amendment to Lifting Agreement, Ferguson Decl. Ex. T.

11

These lifting costs are approximately $200,000 per lift.[4]  The Over/Under Account shows clearly that SNPC elected the Section 5.2 option, which is to borrow the lifting costs against its balances in the Over/Under Account.  Thus, SNPC uses its Over/Under Account balance as collateral to obtain a loan from the U.S. operator for these costs.

**V.      The Assets**

Based on the analysis of the 1979 Convention and the JOA described above (which is, for the most part at least, conceded by the Garnishees), FG Hemisphere has identified two categories of SNPC's assets that constitute obligations owed to SNPC by the Garnishees:  (i) under the JOA and the Amendment to Lifting Agreement of 2001, SNPC has a contractual right to receive from time to time oil (or proceeds from the sale of the same) attributed to its 50% Participating Interest in Yombo Field and pursuant to the Advance Accounts such right of SNPC is in the hands of the Garnishees; and (ii) under the Over/Under Account maintained pursuant to the provisions of the Lifting Agreement of 1991 and the Amendment to Lifting Agreement of 2001, the Garnishees are indebted, from time to time, to SNPC, such debt consisting of the amount of oil in barrels (or, if there is no oil, the cash equivalent of same) as reflected in the periodic statements of the Over/Under Account.

**VI.     The FSIA Test**

Under Section 1610(a) of the FSIA, a creditor may seize: "The property in the United States of a foreign state . . . used for a commercial activity in the United States. . ." 28 U.S.C. § 1610(a).  In Texas, a garnishment action is a statutory procedure by which the property of a debtor in the possession of or owed to the debtor by the garnishee is applied to the payment of a

---

[4]   While this statement is included in the email correspondence produced in this matter (*see* Ferguson Decl. Ex. U), the Over/Under Account for the period ended September 27, 2004 (*see* SNPC Over/Under check, Ferguson Decl. Exhibit 2), appears to show lifting costs of $1,000,000 per lifting.

debt that the debtor owes to a creditor.  WILLIAM V. DORSANEO III, TEXAS LITIGATION GUIDE, vol. 3, § 42.

When granting FG Hemisphere's December 2004 application for writs of garnishment, this Court determined that SNPC *"has assets located in the United States, which have been used for commercial activity in the United States, therefore, satisfying the requirements of the Foreign Sovereign Immunities Act.*" *See* Order dated December 23, 2004, Ferguson Decl. Ex. B (emphasis added).  In doing so, the Court held that the "obligations owed by the Garnishees to SNPC are not immune from garnishment under the FSIA." *Id.*  The facts relied on by the Court in its prior findings remain the same and are equally applicable to the current application. Indeed, in each of the following instances, SNPC's property has been used in continuous commercial activity in the United States over several years.  Thus, the FSIA requirements are satisfied as to SNPC and FG Hemisphere is entitled to the additional writs requested herein.

For the Court's convenience, the facts evidencing that SNPC has assets in the United States which have been used for commercial purposes in the United States are summarized below.

### A.    Used for Commercial Purposes in the United States

"Determining whether property is used for commercial purposes requires a court to both make factual findings concerning how the property was used and to reach legal conclusions concerning whether that particular use was 'for commercial purposes'." *Af-Cap*, 383 F.3d at 368, citing *In re: Liljeberg Enterprises, Inc.*, 304 F.3d 410, 424 (5th Cir. 2002).

The essence of the legal question is whether past commercial use is sufficient to render obligations "property used for commercial purposes" for purposes of the FSIA.  *Id.*  According to the *Af-Cap* court, determining the commercial status of a property's use requires examination of "the totality of circumstances surrounding the property." *Af-Cap*, 383 F.3d at 369.  "Such an

13

examination is to include an examination of the uses of the property in the past as well as all facts related to its present use, with an eye toward determining whether the commercial use of the property, if any, is so exceptional that it is 'an out of character' use for that particular property." *Id.* The *Af-Cap* court notes in a footnote that it is appropriate for a court to consider whether the use of the property is "being manipulated by a sovereign nation to avoid being subject to garnishment under the FSIA." *Af-Cap*, 383 F.3d at 370, fn. 10. Finally, the *Af-Cap* court concluded that "under the FSIA, foreign property retains its immunity protection where its commercial uses, considered holistically and in context, are *bona fide* exceptions to its otherwise non-commercial use." *Af-Cap*, 383 F.3d at 370.

1.   The Advance Account

Pursuant to Article 9 of the JOA, SNPC has been, and continues to be, advanced the full amount of its 50% share of the JOA expenses. Repayment of these advances is accomplished through a "pro rata share of production to which SNPC is entitled." *See* JOA, Article 9.02.3, Ferguson Decl. Ex. M. As explained above, SNPC has provided to the other JOA Participants 75% of its 50% Participating Interest as security for repayment of these costs. *See supra*, at 9-10. In essence, SNPC has used its 50% Participating Interest as collateral for a loan from United States based corporations, which also currently hold the remaining 50% Participating Interest.

In *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174 (5th Cir. 1989) ("*Atwood*"), the Fifth Circuit has characterized such activity as commercial activity in the United States for purposes of the FSIA. More specifically, as the Fifth Circuit explained its *Atwood* holding in the *Connecticut Bank* case:

"Our Decision in [*Atwood*] helps illustrate how certain intangible property can uncontroversially [sic] be viewed as used in service of a commercial activity in the United States.

In *Atwood*, Petrobras, a Brazilian state instrumentality, contracted with Atwood, an American company, to drill oil wells off the coast of Brazil. As security for the sums due Atwood under the contract, Petrobras provided a letter of credit issued by an American bank. When Petrobras refused to pay Atwood, Atwood sued for breach of contract in federal court. Because the letter of credit was due to expire by its own terms, the district court issued a preliminary injunction requiring Petrobras to extend the letter of credit one year from the date of the order or until all issues pertinent to the letter of credit were resolved. Petrobras appealed, arguing that none of the FSIA's exceptions to immunity from prejudgment attachment, 28 U.S.C. § 1610(d), permitted attachment of the letter of credit.

This section, like §1610(a), includes the phrase "used for a commercial activity in the United States." In *Atwood*, we concluded that Petrobras had contractually waived any immunity from prejudgment attachment and affirmed the district court.

Although Atwood did not explicitly consider the "used for" requirement, Petrobras plainly used the letter of credit for a commercial purpose within the ordinary meaning of the phrase "used for." **Petrobras used the letter of credit to secure the services of an American company to do drilling work**. As we explained in the panel opinion, "what matters is not how [the foreign state] made its money, but how it spends it." In *Atwood*, the letter of credit did not represent the income or the revenue from the commercial transaction, as the royalty and tax obligations do here. **Rather, Petrobras put the letter of credit in service of the commercial activity, it "spent" the letter of credit on that activity**."

*Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 258 (5th Cir. 2002) (emphasis added).

The facts could not be more strikingly similar here. The Advance Account has been used continuously from the beginning of the JOA until today. SNPC has obtained a loan from the Garnishees, all three of which maintained offices in the United States. SNPC obtained that loan by pledging, as collateral for that loan, "up to" 75% of its interest in the Yombo Field enterprise. Under Article 9 of the JOA, the Garnishees/lenders are authorized to produce, market and account for, on SNPC's behalf, "up to" 75% of SNPC's Participating Interest until SNPC's share

15

of the JOA expenses is paid off.  Thus, this arrangement provides clear evidence of commercial activity in the United States of SNPC's 50% Participating Interest in the Yombo Field.

      2.    The Over/Under Account

According to the Over/Under Account practice described in the Garnishees' Motion, the JOA Participants own the oil production delivered to the Conkouati in their respective participating interest shares. *See* Garnishees' Motion, Ferguson Decl. Ex. E.  CMS, as operator, allocates oil taken from the Conkouati among the JOA Participants and keeps track of such allocation through the Over/Under Account.  Thus, use of the Over/Under Account results in the episodic making of loans from the JOA Participants to SNPC and also the making of loans from SNPC to the JOA Participants. *See supra* at 10-12.  Under this practice, the effect of a JOA Participant being underdelivered means that such JOA Participant has, in essence, extended credit to the overdelivered JOA Participants, who, in turn, owe obligations to the underdelivered JOA Participant either in kind, or, if the storage facility is no longer in use, then in cash.  As a result of this practice, in each instance that SNPC has been extended credit by the Garnishees according to the function of the Over/Under Account, it has used the future obligation as collateral.  Moreover, in each instance that SNPC has been in an underdelivered position, it has extended credit to the Garnishees based upon their liftings of oil, and SNPC is entitled to repayment in the future, either in cash or in kind.  This practice also constitutes use of SNPC's 50% Participating Interest for commercial activity under the standard established by the Fifth Circuit in the *Atwood* and *Connecticut Bank* cases.

      3.    Financing of Lifting Costs

In addition to the loan and credit provided to SNPC as described in the preceding section, SNPC receives another form of financing by the other JOA Participants/Garnishees.   The

Garnishees cover the lifting costs applicable to SNPC's liftings of crude oil attributable to SNPC's Participating Interest and Congo's royalty. Repayment of such costs is accomplished directly out of "the next lifting succeeding a SNPC lifting." *See* Section 5.2 of Amendment to Lifting Agreement, Ferguson Decl. Ex. T. Once again, SNPC is using its 50% Participating Interest to receive financing from the Garnishees. And once again, this practice constitutes use of SNPC's 50% Participating Interest for commercial activity under the standard established by the Fifth Circuit in the *Atwood* and *Connecticut* Bank cases.

### B.      Situs of Obligations

The contractual obligations owing to SNPC by the Garnishees pursuant to the JOA and the other agreements in connection with the Yombo Field commercial enterprise, whether payable in cash or in kind, constitute intangible property. *Af-Cap*, 383 F.3d at 372, fn. 13. Utilizing the language of *Tabacelera Severiano Jorge, S.A. v. Standard Cigar Co.*, 392 F.2d 706, 714 (5th Cir. 1968), the Fifth Circuit observed in *Af-Cap* that "[t]he situs of intangible property is about as intangible a concept as is known to the law," and "affirmed that the situs of intangible property will vary, depending on the context." The Fifth Circuit then found that the situs of royalty obligations owed by the Garnishees to Congo was in the United States, and based its holding on the premise that the situs of a debt obligation is the situs of the debtor. *Af-Cap*, 383 F.3d at 372. There is no distinction to be made between the situs of royalty obligations discussed in *Af-Cap* and the situs of contractual obligations owed by the Garnishees to SNPC. Moreover, this Court has previously determined that the intangible obligations owed by the Garnishees to SNPC are located in the United States. *See* Order dated December 23, 2004, Ferguson Decl. Ex. B. Therefore, the situs of such obligations is with the Garnishees in the United States.

17

HOU:2485961 1

## VII.    Need for Emergency Relief

As explained above, a lifting of crude oil has been scheduled for August 2005. Moreover, the Garnishees have given notice that they intend to transfer their interests in the Convention as soon as August 17, 2005.  In the event this Court determines that the December Writs did not attach to the intangible effects and thus to the August Lifting, any delay in garnishing the obligations of the Garnishees to SNPC will substantially prejudice FG Hemisphere's rights as a judgment creditor of the Congo.  It is imperative that FG Hemisphere be able to obtain quickly the relief it has requested herein in order for it to be able to enforce this Court's Judgment by obtaining and serving garnishment writs prior to August 17, 2005.  FG Hemisphere asks this Court to expedite its consideration of this Motion so that FG Hemisphere may protect its legitimate interest in its Judgment, which remains wholly unsatisfied.

## VIII.    Prayer for Relief.

WHEREFORE, FG Hemisphere respectfully requests the writs of garnishment be issued on an expedited basis against the obligations of the Garnishees to SNPC, and such other relief to which FG Hemisphere may justly be entitled.  Proposed garnishment writs are attached to this Application.  FG Hemisphere further asks that the resolution of this Application in no way prejudice its rights to garnish additional assets of Congo (including those of SNPC) in this proceeding.

18

Respectfully submitted,

Andrew L. Jefferson, Jr.
State Bar No. 10610000
1314 Texas Street, Suite 500
Houston, Texas  77002-3513
(713) 227-7006
(713) 227-7260 FAX

ATTORNEYS FOR FG HEMISPHERE
ASSOCIATES, L.L.C.

Of Counsel:

ANDREWS KURTH LLP

Dillon Ferguson
State Bar No. 06911700
600 Travis, Suite 4200
Houston, Texas  77002
(713) 220-4200
(713) 220-4285 (FAX)

19

HOU:2485961.1

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for FG Hemisphere Associates, L.L.C. has conferred with counsel for the République du Congo and counsel for the Garnishees on August 12, 2005 in a good faith effort to resolve the matters in dispute but has been unable to reach an agreement with either the République du Congo or the Garnishees.   Both the République du Congo and the Garnishees are opposed to this Application.

_____
Dillon J. Ferguson


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Emergency Opposed Second Application to Issue Writs of Garnishment with Respect to Société Nationale des Pétroles du Congo has been served, as shown below, on August 12, 2005.

_____
Dillon J. Ferguson


*(via hand delivery)*
VINSON & ELKINS, LLP
Guy S. Lipe
2300 First City Tower
1001 Fannin
Houston, TX  77002-6760
(713) 758-1109
(713) 615-5607 (FAX)
ATTORNEY-IN-CHARGE FOR
GARNISHEES

*(via Federal Express Overnight)*
CLEARLY, GOTTLIEB, STEEN &
HAMILTON
Boaz Morag
One Liberty Plaza
New York, NY  10006
(212) 225-2894
(212) 225-3999 (FAX)
ATTORNEY-IN-CHARGE FOR
DEFENDANT
RÉPUBLIQUE DU CONGO

20

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FG HEMISPHERE ASSOCIATES, L.L.C.
              Plaintiff,          §
v.                                §
RÉPUBLIQUE DU CONGO,       §
              Defendant,      §
And                           §
CMS OIL AND GAS COMPANY,  §
CMS OIL AND GAS (INTERNATIONAL) §
COMPANY,                   §
CMS NOMECO INTERNATIONAL CONGO §
HOLDINGS, INC.,            §
CMS NOMECO CONGO, INC.,    §
CMS OIL AND GAS (HOLDINGS), LTD., §
CMS OIL AND GAS (INTERNATIONAL) LTD., §
CMS NOMECO CONGO LDC,    §
CMS OIL AND GAS (CONGO) LTD.,  §     CIVIL ACTION No.: H-02-4261
CMS OIL AND GAS (SERVICES) COMPANY, §
NUEVO ENERGY COMPANY,    §
THE NUEVO CONGO COMPANY,  §
THE CONGO HOLDING COMPANY, §
NUEVO CONGO, LTD.,        §
NUEVO INTERNATIONAL INC.,   §
NUEVO INTERNATIONAL HOLDINGS, LTD., §
PERENCO INC.,              §
PERENCO OIL AND GAS (INTERNATIONAL) §
COMPANY,                   §
PERENCO INTERNATIONAL (CONGO) INC., §
PERENCO OIL AND GAS (SERVICES)  §
COMPANY and LANKAN INC.    §
              Garnishees.

## <u>GARNISHMENT WRIT</u>

THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS

**TO:**   **CMS NOMECO CONGO, INC., Garnishee, greetings:**

     In connection with Cause No. H-02-4261 in the United States District Court for the

Southern District of Texas, entitled FG Hemisphere Associates, L.L.C., Plaintiff, v. République

du Congo, Defendant, FG Hemisphere has filed an application for a writ of garnishment directed against you, CMS Nomeco Congo, Inc.

FG Hemisphere filed a judgment of the United States District Court for the Southern District of New York (the "New York Judgment"), against the Defendant in the sum of $151,952,486.23, in the Texas state court. The New York Judgment, which was removed by the Defendant to the United States District Court for the Southern District of Texas and assigned Cause No. H-02-4351, has been consolidated with this proceeding. The New York Judgment has also been registered in the Southern District of Texas under Cause No. MC-02-301.

Take notice that you must appear as stated above in the United States Courthouse in the City of Houston, Harris County, Texas at or before 10 o'clock a.m. on the Monday next following the expiration of 20 days from the date of service of this writ on you, then and there to answer on oath what, if anything, you are indebted to République du Congo, including without limitation, what, if anything, you are indebted to Société Nationale des Pétroles du Congo ("SNPC"), and were indebted when this writ was served on you, and what effects, if any, of Congo, including those of SNPC, you have in your possession, and had when this writ was served, and what other persons, if any, within your knowledge, are indebted to Congo, including debts to SNPC, or have effects belonging to it in their possession.

The types of effects and debts covered by this writ of garnishment include any assets and other property of the Congo, including SNPC, of any nature including any payments or obligations due to Congo, including SNPC, whether denominated as taxes, fees, royalties, net profits, oil production or, proceeds from sale of oil production, loan payments or repayments whether payable in cash or in-kind.

2

You are further commanded NOT to pay any debt or deliver any effects to Congo, including SNPC, pending further orders of this Court.  Do not fail in this matter, but answer as the law directs.

## NOTICE OF GARNISHEE

If you do not appear as commanded and answer questions concerning any debts and assets of Congo including, without limitation, what, if anything, you are indebted to SNPC, judgment may be rendered against you.

IF YOU FAIL TO RESPOND OR FILE AN ANSWER, YOU MAY BECOME PERSONALLY LIABLE FOR THE FULL AMOUNT OF THE JUDGMENT AGAINST RÉPUBLIQUE DU CONGO, EVEN IN AN AMOUNT IN EXCESS OF THE VALUE OF THE PROPERTY IN YOUR POSSESSION BELONGING TO RÉPUBLIQUE DU CONGO, OR IN EXCESS OF THE AMOUNT OF ANY DEBT YOU OWE RÉPUBLIQUE DU CONGO, INCLUDING SNPC.

**TO:   THE RÉPUBLIQUE DU CONGO, Debtor, greetings:**

You are hereby notified that certain properties alleged to be owned by you or Société Nationale des Pétroles du Congo have been garnished.  If you claim any rights in this property, you are advised:

YOU HAVE A RIGHT TO REGAIN POSSESSION OF THE PROPERTY BY FILING A REPLEVY BOND.  YOU HAVE A RIGHT TO SEEK TO REGAIN POSSESSION OF THE PROPERTY BY FILING WITH THE COURT A MOTION TO DISSOLVE THIS WRIT.

3

Herein fail not, but make due as the law directs.

Signed this _____ day of _____, 2005.

_____
Keith P. Ellison
United States District Judge

4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FG HEMISPHERE ASSOCIATES, L.L.C. | |
| Plaintiff, | § |
| v. | § |
| RÉPUBLIQUE DU CONGO, | § |
| Defendant, | § |
| And | § |
| CMS OIL AND GAS COMPANY, | § |
| CMS OIL AND GAS (INTERNATIONAL) | § |
| COMPANY, | § |
| CMS NOMECO INTERNATIONAL CONGO | § |
| HOLDINGS, INC., | § |
| CMS NOMECO CONGO, INC., | § |
| CMS OIL AND GAS (HOLDINGS), LTD., | § |
| CMS OIL AND GAS (INTERNATIONAL) LTD., | § |
| CMS NOMECO CONGO LDC, | § |
| CMS OIL AND GAS (CONGO) LTD., | § CIVIL ACTION No.: H-02-4261 |
| CMS OIL AND GAS (SERVICES) COMPANY, | § |
| NUEVO ENERGY COMPANY, | § |
| THE NUEVO CONGO COMPANY, | § |
| THE CONGO HOLDING COMPANY, | § |
| NUEVO CONGO, LTD., | § |
| NUEVO INTERNATIONAL INC., | § |
| NUEVO INTERNATIONAL HOLDINGS, LTD., | § |
| PERENCO INC., | § |
| PERENCO OIL AND GAS (INTERNATIONAL) | § |
| COMPANY, | § |
| PERENCO INTERNATIONAL (CONGO) INC., | § |
| PERENCO OIL AND GAS (SERVICES) | § |
| COMPANY and LANKAN INC. | § |
| Garnishees. | |

## GARNISHMENT WRIT

THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS

**TO:   THE NUEVO CONGO COMPANY, Garnishee, greetings:**

In connection with Cause No. H-02-4261 in the United States District Court for the

Southern District of Texas, entitled FG Hemisphere Associates, L.L.C., Plaintiff, v. République

du Congo, Defendant, FG Hemisphere has filed an application for a writ of garnishment directed against you, The Nuevo Congo Company.

FG Hemisphere filed a judgment of the United States District Court for the Southern District of New York (the "New York Judgment"), against the Defendant in the sum of $151,952,486.23, in the Texas state court.  The New York Judgment, which was removed by the Defendant to the United States District Court for the Southern District of Texas and assigned Cause No. H-02-4351, has been consolidated with this proceeding.  The New York Judgment has also been registered in the Southern District of Texas under Cause No. MC-02-301.

Take notice that you must appear as stated above in the United States Courthouse in the City of Houston, Harris County, Texas at or before 10 o'clock a.m. on the Monday next following the expiration of 20 days from the date of service of this writ on you, then and there to answer on oath what, if anything, you are indebted to République du Congo, including without limitation, what, if anything, you are indebted to Société Nationale des Pétroles du Congo ("SNPC"), and were indebted when this writ was served on you, and what effects, if any, of Congo, including those of SNPC, you have in your possession, and had when this writ was served, and what other persons, if any, within your knowledge, are indebted to Congo, including debts to SNPC, or have effects belonging to it in their possession.

The types of effects and debts covered by this writ of garnishment include any assets and other property of the Congo, including SNPC, of any nature including any payments or obligations due to Congo, including SNPC, whether denominated as taxes, fees, royalties, net profits, oil production or, proceeds from sale of oil production, loan payments or repayments and whether payable in cash or in-kind.

2

You are further commanded NOT to pay any debt or deliver any effects to Congo, including SNPC, pending further orders of this Court.  Do not fail in this matter, but answer as the law directs.

### NOTICE OF GARNISHEE

If you do not appear as commanded and answer questions concerning any debts and assets of Congo including, without limitation, what, if anything, you are indebted to SNPC, judgment may be rendered against you.

IF YOU FAIL TO RESPOND OR FILE AN ANSWER, YOU MAY BECOME PERSONALLY LIABLE FOR THE FULL AMOUNT OF THE JUDGMENT AGAINST RÉPUBLIQUE DU CONGO, EVEN IN AN AMOUNT IN EXCESS OF THE VALUE OF THE PROPERTY IN YOUR POSSESSION BELONGING TO RÉPUBLIQUE DU CONGO, OR IN EXCESS OF THE AMOUNT OF ANY DEBT YOU OWE RÉPUBLIQUE DU CONGO, INCLUDING SNPC.

**TO:    THE RÉPUBLIQUE DU CONGO, Debtor, greetings:**

You are hereby notified that certain properties alleged to be owned by you or Société Nationale des Pétroles du Congo have been garnished.  If you claim any rights in this property, you are advised:

YOU HAVE A RIGHT TO REGAIN POSSESSION OF THE PROPERTY BY FILING A REPLEVY BOND.  YOU HAVE A RIGHT TO SEEK TO REGAIN POSSESSION OF THE PROPERTY BY FILING WITH THE COURT A MOTION TO DISSOLVE THIS WRIT.

3

Herein fail not, but make due as the law directs.

Signed this _____ day of _____, 2005.

_____
Keith P. Ellison
United States District Judge

4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FG HEMISPHERE ASSOCIATES, L.L.C. | § |
| Plaintiff, | § |
| v. | § |
| RÉPUBLIQUE DU CONGO, | § |
| Defendant, | § |
| And | § |
| CMS OIL AND GAS COMPANY, | § |
| CMS OIL AND GAS (INTERNATIONAL) | § |
| COMPANY, | § |
| CMS NOMECO INTERNATIONAL CONGO | § |
| HOLDINGS, INC., | § |
| CMS NOMECO CONGO, INC., | § |
| CMS OIL AND GAS (HOLDINGS), LTD., | § |
| CMS OIL AND GAS (INTERNATIONAL) LTD., | § |
| CMS NOMECO CONGO LDC, | § |
| CMS OIL AND GAS (CONGO) LTD., | §     CIVIL ACTION No.: H-02-4261 |
| CMS OIL AND GAS (SERVICES) COMPANY, | § |
| NUEVO ENERGY COMPANY, | § |
| THE NUEVO CONGO COMPANY, | § |
| THE CONGO HOLDING COMPANY, | § |
| NUEVO CONGO, LTD., | § |
| NUEVO INTERNATIONAL INC., | § |
| NUEVO INTERNATIONAL HOLDINGS, LTD., | § |
| PERENCO INC., | § |
| PERENCO OIL AND GAS (INTERNATIONAL) | § |
| COMPANY, | § |
| PERENCO INTERNATIONAL (CONGO) INC., | § |
| PERENCO OIL AND GAS (SERVICES) | § |
| COMPANY and LANKAN INC. | § |
| Garnishees. | |

## <u>GARNISHMENT WRIT</u>

THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS

**TO:   NUEVO CONGO, LTD., Garnishee, greetings:**

In connection with Cause No. H-02-4261 in the United States District Court for the

Southern District of Texas, entitled FG Hemisphere Associates, L.L.C., Plaintiff, v. République

1

du Congo, Defendant, FG Hemisphere has filed an application for a writ of garnishment directed against you, Nuevo Congo, Ltd..

FG Hemisphere filed a judgment of the United States District Court for the Southern District of New York (the "New York Judgment"), against the Defendant in the sum of $151,952,486.23, in the Texas state court. The New York Judgment, which was removed by the Defendant to the United States District Court for the Southern District of Texas and assigned Cause No. H-02-4351, has been consolidated with this proceeding. The New York Judgment has also been registered in the Southern District of Texas under Cause No. MC-02-301.

Take notice that you must appear as stated above in the United States Courthouse in the City of Houston, Harris County, Texas at or before 10 o'clock a.m. on the Monday next following the expiration of 20 days from the date of service of this writ on you, then and there to answer on oath what, if anything, you are indebted to République du Congo, including without limitation, what, if anything, you are indebted to Société Nationale des Pétroles du Congo ("SNPC") and were indebted, when this writ was served on you, and what effects, if any, of Congo, including those of SNPC, you have in your possession, and had when this writ was served, and what other persons, if any, within your knowledge, are indebted to Congo, including debts to SNPC, or have effects belonging to it in their possession.

The types of effects and debts covered by this writ of garnishment include any assets and other property of the Congo, including SNPC, of any nature including any payments or obligations due to Congo, including SNPC, whether denominated as taxes, fees, royalties, net profits, oil production or, proceeds from sale of oil production, loan payments or repayments and whether payable in cash or in-kind.

2

You are further commanded NOT to pay any debt or deliver any effects to Congo, including SNPC, pending further orders of this Court.  Do not fail in this matter, but answer as the law directs.

## NOTICE OF GARNISHEE

If you do not appear as commanded and answer questions concerning any debts and assets of Congo including, without limitation, what, if anything, you are indebted to SNPC, judgment may be rendered against you.

IF YOU FAIL TO RESPOND OR FILE AN ANSWER, YOU MAY BECOME PERSONALLY LIABLE FOR THE FULL AMOUNT OF THE JUDGMENT AGAINST RÉPUBLIQUE DU CONGO, EVEN IN AN AMOUNT IN EXCESS OF THE VALUE OF THE PROPERTY IN YOUR POSSESSION BELONGING TO RÉPUBLIQUE DU CONGO, OR IN EXCESS OF THE AMOUNT OF ANY DEBT YOU OWE RÉPUBLIQUE DU CONGO, INCLUDING SNPC.

**TO:   THE RÉPUBLIQUE DU CONGO, Debtor, greetings:**

You are hereby notified that certain properties alleged to be owned by you or Société Nationale des Pétroles du Congo have been garnished.  If you claim any rights in this property, you are advised:

YOU HAVE A RIGHT TO REGAIN POSSESSION OF THE PROPERTY BY FILING A REPLEVY BOND.  YOU HAVE A RIGHT TO SEEK TO REGAIN POSSESSION OF THE PROPERTY BY FILING WITH THE COURT A MOTION TO DISSOLVE THIS WRIT.

HOU:2485961.1

Herein fail not, but make due as the law directs.

Signed this _____ day of _____, 2005.

_____

Keith P. Ellison
United States District Judge

HOU:2485961.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| FG HEMISPHERE ASSOCIATES, L.L.C. | § | |
| Plaintiff, | § | |
| v. | § | |
| REPUBLIQUE DU CONGO, | § | |
| Defendant, | § | |
| And | § | |
| CMS OIL AND GAS COMPANY, CMS | § | |
| OIL AND GAS (INTERNATIONAL) | § | |
| COMPANY, CMS NOMECO | § | |
| INTERNATIONAL CONGO HOLDINGS, | § | |
| INC., CMS NOMECO CONGO, INC., CMS | § | CIVIL ACTION No.: H-02-4261 |
| OIL AND GAS (HOLDINGS), LTD., CMS | § | |
| OIL AND GAS (INTERNATIONAL) LTD., | § | |
| CMS NOMECO CONGO LDC, CMS OIL | § | |
| AND GAS (CONGO) LTD., CMS OIL AND | § | |
| GAS (SERVICES) COMPANY, NUEVO | § | |
| ENERGY COMPANY, THE NUEVO | § | |
| CONGO COMPANY, THE CONGO | § | |
| HOLDING COMPANY, NUEVO CONGO, | § | |
| LTD., NUEVO INTERNATIONAL INC., | § | |
| NUEVO INTERNATIONAL HOLDINGS, | § | |
| LTD., PERENCO INC., PERENCO OIL | § | |
| AND GAS (INTERNATIONAL) | § | |
| COMPANY, PERENCO | § | |
| INTERNATIONAL (CONGO) INC., | § | |
| PERENCO OIL AND GAS (SERVICES) | § | |
| COMPANY and LANKAN INC. | § | |
| Garnishees. | § | |

<u>**DECLARATION OF DILLON J. FERGUSON**</u>

I, Dillon J. Ferguson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1.      I am an attorney in the law firm of Andrews Kurth LLP, of counsel to the plaintiff, FG Hemisphere Associates, L.L.C. ("FG Hemisphere").   I am over the age of twenty-one (21) and am in all ways competent to make and give this Declaration.  Based on my knowledge as counsel in this action, I submit this Declaration in support of FG Hemisphere's

Emergency Opposed Second Application to Issue Writs of Garnishment with Respect to Societe Nationale Des Petroles Du Congo.  Every statement made in this Declaration is true and correct and within my personal knowledge.

2.      Attached hereto as Exhibit A is a true and correct copy of the Convention for the production of oil in The Republic of Congo, dated May 25, 1979.

3.      Attached hereto as Exhibit B is a true and correct copy of this Court's December 23, 2004 Order on Writs of Garnishment.

4.      On September 26, 2001, FG Hemisphere filed suit against the Congo in the United States District Court for the Southern District of New York (the "New York Court") to enforce a loan agreement.  The action was styled *FG Hemisphere Assoc., L.L.C. v. Republique du Congo*, Case No. 01 Civ. 8700 (SAS) (S.D.N.Y.).   Attached hereto as Exhibit C is a true and correct copy of the Judgment entered on July 24, 2002 in the action.  FG Hemisphere's Judgment against the Congo has been registered in this Court and remains wholly unsatisfied despite FG Hemisphere's efforts to enforce it.

5.      Attached hereto as Exhibit D is a true and correct copy of the Order Granting FG Hemisphere's Motion to Execute on Judgment dated September 5, 2002.

6.      Attached hereto as Exhibit E is a true and correct copy of the Garnishee's Motion to Dismiss Writs of Garnishment dated October 26, 2004.

7.      Attached hereto as Exhibit F is a true and correct copy of this Court's October 5, 2004 Order authorizing issuance of Writs of Garnishment.

8.      Attached hereto as Exhibit G is a true and correct copy of the October 8, 2004 Writs of Garnishment.

9.      Attached hereto as Exhibit H is a true and correct copy of this Court's Order dated October 22, 2004.

10.     Attached hereto as Exhibit I is a true and correct copy of FG Hemisphere's Emergency Application to Issue Writs of Garnishment dated September 23, 2004.

11.     Attached hereto as Exhibit J is a true and correct copy of the Confidential Stipulation entered into under seal in the United States District Court for the Southern District of New York on June 26, 2003.

12.     Attached hereto as Exhibit K is a true and correct copy of the Loan Agreement underlying the Congo's indebtedness.

13.     Attached hereto as Exhibit L is a true and correct copy of the Joint Discovery/Case Management Plan Under Federal Rule of Civil Procedure 26(f) dated February 21, 2003.

14.     Attached hereto as Exhibit M is a true and correct copy of the Joint Operating Agreement dated May 25, 1979.

15.     Attached hereto as Exhibit N is a true and correct copy of Ministerial Decree No. 99-51 issued by the Congo on April 9, 1999.

16.     Attached hereto as Exhibit O is a true and correct copy of the Garnishee's Responses to FG Hemisphere's Interrogatories dated December 1, 2003.

3

17.     Attached hereto as Exhibit P is a true and correct copy of the Lifting Agreement.

18.     Attached hereto as Exhibit Q is a true and correct copy of documents bates labeled GAR 05723-05726.

19.     Attached hereto as Exhibit R is a true and correct copy of Ministerial Decree 99-171 issued by the Congo on September 18, 1999.

20.     Attached hereto as Exhibit S is a true and correct copy of documents bates labeled GAR 00380-00387.

21.     Attached hereto as Exhibit T is a true and correct copy of the Amendment to Lifting Agreement.

22.     Attached hereto as Exhibit U is a true and correct copy of documents bates labeled EML 004120-004123.

23.     Attached hereto as Exhibit 1 is a true and correct copy of the Advance Account, bates labeled NUE 000046.

24.     Attached hereto as Exhibit 2 is a true and correct copy of the Over/Under Account.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted this 12th day of August, 2005.

_____

Dillon J. Ferguson

4



#3303-A

## CONVENTION

- The People's Republic of Congo
- Congolese Superior Oil Company
- Cities Service Congo Petroleum Corporation
- Canadian Superior Oil Ltd.
- Société Nationale de Recherches et
  d'Exploitation Pétrolières "HYDRO-CONGO"

May 25, 1979

ENGLISH
TRANSLATION

Copied from
ORIGINALS File

**GAR 00056**



EXHIBIT

A

<u>INDEX</u>

1.  Table of contents

2.  Convention

3.  Exhibit I:     Decree granting the "Marine 1" permit.

4.  Exhibit II.

5.  Exhibit III:   Depreciation rates applicable to the
                   COMPANIES.

6.  Exhibit IV:    Payment of the royalty and of the
                   corporate tax.

7.  Exhibit V:     Model of letter of guarantee.

8.  Appendix.

GAR 00057

Page

1. Definitions ........................................ 2
2. Purpose ........................................... 4
3. Effective Date - Term - Exploitation Permit .......... 4
4. Beneficiaries ..................................... 4
5. Warranties ........................................ 5
6. Taxes ............................................. 6
   6.03  Computation of the corporate tax on each of the
         COMPANIES .................................... 7
7. Mining royalty .................................... 8
8. Foreign exchange .................................. 9
9. Lump sum payments ................................. 11
10. Disposition of HYDROCARBONS ...................... 11
11. Employment and training of personnel ............. 13
12. Congolese suppliers .............................. 14
13. Provision of information ......................... 15
14. Transport and treatment of products ............. 15
15. Force majeure .................................... 16
16. Tax declaration and payment ...................... 17
17. Arbitration ...................................... 17
18. Applicable law ................................... 18
19. Notices .......................................... 18
20. Amendments ....................................... 19
21. Guarantee by parent company ..................... 20

EXHIBIT I
  Copy of Decree Granting the PERMIT

EXHIBIT II

EXHIBIT III
  Depreciation Rates Applicable to the COMPANIES

EXHIBIT IV
  I - Payment of Royalty
  II - Payment of Corporate Tax

EXHIBIT V
  Model of Letter of Guarantee

(i)

GAR 00058