UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FG HEMISHERE ASSOCIATES LLC, § § | |
| Plaintiff, § § | |
| and § § | |
| AF-CAP, INC., § WALKER INTERNATIONAL § HOLDINGS LIMITED, § and § NATIONAL UNION FIRE INSURANCE § COMPANY OF PITTSBURGH PA, § § | CIVIL ACTION NO. H-02-4261 |
| Intervenor Plaintiffs, § VS. § § THE RÉPUBLIQUE DU CONGO, § § Defendant, § § and § § CMS NOMECO INTERNATIONAL § CONGO HOLDINGS INC., *et al.*, § § Garnishees. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Garnishees' motion for clarification, Docket No. 379. After reviewing the parties' filings and oral arguments and the applicable law, the Court makes the following findings.

Garnishees have asked the Court to clarify the obligations imposed by the writs of garnishment issued in February 2006. Specifically, Garnishees have informed the Court that the Congo intends to take a lifting of oil on or about April 11, 2006, and that the Congo has expressed its intent, if necessary, to take the lifting by force. Garnishees

1

profess uncertainty as to what degree of resistance is required of them by the writs and, indeed, whether the writs even apply to the April lifting. Plaintiff and Intervenors, in turn, seek an Order of the Court requiring Garnishees to post a bond in the event that the Congo takes the lifting, as it is certain to do.

As a threshold matter, the Court holds that the writs do encompass the April lifting. As the Court has previously explained, the asset garnished in this case is not the oil itself but rather Garnishees' ongoing intangible payment obligation to the Congo. That obligation was in existence at the time that the writs were issued and served and is therefore subject to the writs. The only question, therefore, is whether the Court has the inherent authority to require Garnishees to post a security bond.

Garnishees argue that this Court lacks that power, on the grounds that the purpose of such a bond would be to secure a prospective judgment against Garnishees in this case and that such a purpose is impermissible under applicable precedent. The case law cited by Garnishees provides, however, only that a judgment is required before a creditor can state a cognizable claim against the property of a debtor. *See, e.g.*, *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 323-24 (1999). Here, judgments have already been rendered in favor of Plaintiff and Intervenors against the Congo. The garnishment writs, in turn, already obligate Garnishees to surrender to Plaintiff and Intervenors the amounts of all debts that Garnishees owe to the Congo. Plainly, then, the rights asserted by Garnishors are established, not prospective, and the Court therefore possesses the inherent power to require Garnishees to post a bond securing the performance of their obligations under the writs.[1]

---

[1] The judgment of the Fifth Circuit in *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978), is not to the contrary. The *ITT* court held that *prejudgment* garnishment was inappropriate "where . . . the

2

Garnishees next contend that the Court lacks jurisdiction to grant affirmative relief, because appeals concerning the Congo's sovereign immunity claim are pending before the Fifth Circuit. This Court has, however, already determined that the Congo has waived such immunity and, therefore, that the Court possesses jurisdiction over the parties to and subject matter of this action. *See* Docket No. 93 (October 22, 2004 Order, Hoyt, J.). Unless and until the Fifth Circuit sees fit to reverse that judgment, the Court will continue to exercise jurisdiction and to proceed with the adjudication of this case.[2]

Garnishees also argue that the Court lacks personal jurisdiction over them because, between October 2002 and February 2004, they moved all of their activities out of the United States, and, therefore, they do not possess the "minimum contacts" with the state of Texas required to assure due process of law. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985); *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). The minimum contacts requirement applies, however, to the circumstances existing at the time that a suit is commenced; jurisdiction cannot later be defeated by a transfer of personnel or assets. *See, e.g.*, *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938) ("Events occurring subsequent to the institution of suit . . . do not oust jurisdiction."). Garnishees concede that personal jurisdiction over them existed in Texas in 2002, when this suit was filed. This Court therefore reiterates its original finding that it continues to possess jurisdiction over those

---

prospect of a final judgment in the plaintiff's favor [on the debt] is somewhat remote." *Id.* at 1360. Here, no one disputes the fact that the Congo is a judgment debtor.

[2] Garnishees protest that this Court has previously held that the jurisdictional issues are unripe. Garnishees are mistaken. In its Order of September 13, 2005, the Court held only that the Garnishees' *motion to dismiss* was rendered unripe for adjudication by the pending appeal. Accordingly, that motion was dismissed without prejudice to refiling.

3

of the Congo's intangible assets that are held by Garnishees. *See* Docket No. 143 (December 23, 2004 Order, Hoyt, J.).

Garnishees also contest the method of service of the writs and contend that garnishment is an action *in rem* and, therefore, that the Court should determine jurisdiction as of February 2006, the time of service, without reference to the prior history of this case. Like the minimum contacts argument addressed above, this line of reasoning has been advanced and rejected repeatedly throughout the course of this litigation. *See id.* The Court sees no reason to depart today from its earlier rulings on these issues.

Garnishees next contend that the act of state doctrine precludes this Court from granting affirmative relief against them. The act of state doctrine provides that:

> Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.

*Underhill v. Hernandez*, 168 U.S. 250, 252 (1897). Garnishees argue that a grant of affirmative relief against them must be predicated on a finding that they have engaged in collusion with the Congo and that such a finding would violate the act of state doctrine.

Garnishees' position ignores the fact that they themselves are required to comply with the laws of the United States, irrespective of the applicability of those laws to the Congo or of the interrelationship of United States and Congolese law. Garnishees' failure to turn over the assets of the Congo that will pass through their hands this month – their collusion with the Congo in keeping those assets from Garnishors – will be a failure attributable to the Garnishees alone and occurring in this

4

country.  It does not require this Court to address the validity of the Congo's behavior regarding the lifting, under Congolese law.

Moreover, while the Congo will, within the next few weeks, take possession of oil located in the Congo, the assets subject to the garnishment writs in this case are intangibles located in the United States.  *See Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 371-72 & n.13 (5th Cir. 2004).  The actions at issue here are not, therefore, actions subject to the act of state doctrine, because they will not take place within the territory of a foreign sovereign.

The case law cited by Garnishees as supporting the contrary position are not apropos, because it involves circumstances in which the foreign state had the power unilaterally to change the positions of the parties touching the *res*.  *See, e.g.*, *Tabacalera Serviano Jorge, S.A. v. Standard Cigar Co.*, 392 F.2d 706, 715-16 (5th Cir. 1968).  Such is not the case here, as is demonstrated by Garnishees' previous and ongoing acts, taken in their own behalf, in adjusting the over/under accounts to compensate themselves for the Congo's imposition of taxes prohibited by the convention applicable to the oil liftings.  Thus, the act of state doctrine does not preclude the Court from requiring a bond here.  For the same reason, the doctrine of state compulsion, which holds that a nation may not require a person to refrain from doing an act in another state that is required by the law of that state, does not apply to this case.  *See* RESTATEMENT (THIRD) OF CONTRACTS § 441(1)(b) (1987).

Finally, Garnishees rehash their oft-repeated arguments that the obligations at issue here are non-monetary and therefore unenforceable and that it is unfair to expose Garnishees to double liability.  The Court has ruled on these contentions in the past and

declines to revisit them now. The Court does, however, note that it is increasingly skeptical of this argument, given the emerging evidence concerning Garnishees' exercise of self-help in their own behalf against the Congo.

Because none of Garnishees' arguments against the imposition of a bond succeeds, because it is incumbent upon this Court to insist upon respect for and compliance with the previous orders of this and other federal courts, and because it now appears that Garnishees have several methods of recourse[3] to defend themselves against double liability, the Court hereby **ORDERS** Garnishees to pay into the Court's registry, on or before the 1st of May, 2006, a bond in the amount of the full value of the oil taken by the Congo in the April lifting.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 5th day of April, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**

---

[3] In addition to self-help via use of the over/under account, Garnishees may invoke the arbitration clause of the convention to seek adjudication of their rights against the Congo in Switzerland.