IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FG HEMISPHERE ASSOCIATES, L.L.C. § | |
| Plaintiff, § | |
| v. § | |
| § | |
| RÉPUBLIQUE DU CONGO, § | |
| Defendant, § | |
| And § | |
| CMS OIL AND GAS COMPANY, § | |
| CMS OIL AND GAS (INTERNATIONAL) § | |
| COMPANY, § | |
| CMS NOMECO INTERNATIONAL CONGO § | |
| HOLDINGS, INC., § | |
| CMS NOMECO CONGO, INC., § | |
| CMS OIL AND GAS (HOLDINGS), LTD., § | |
| CMS OIL AND GAS (INTERNATIONAL) LTD., § | |
| CMS NOMECO CONGO LDC, § | |
| CMS OIL AND GAS (CONGO) LTD., § | |
| CMS OIL AND GAS (SERVICES) COMPANY, § | |
| NUEVO ENERGY COMPANY, § | CIVIL ACTION NO. H-02-4261 |
| THE NUEVO CONGO COMPANY, § | |
| THE CONGO HOLDING COMPANY, § | |
| NUEVO CONGO, LTD., § | |
| NUEVO INTERNATIONAL INC., § | |
| NUEVO INTERNATIONAL HOLDINGS, LTD., § | |
| PERENCO INC., § | |
| PERENCO OIL AND GAS (INTERNATIONAL) § | |
| COMPANY, § | |
| PERENCO INTERNATIONAL (CONGO) INC., § | |
| PERENCO OIL AND GAS (SERVICES) § | |
| COMPANY and LANKAN INC. § | |
| Garnishees. § | |

**FG HEMISPHERE ASSOCIATES, L.L.C.'S RESPONSE IN OPPOSITION
TO THE GARNISHEES' MOTION TO COMPEL DISCOVERY**

FG Hemisphere Associates, L.L.C. ("FG Hemisphere") files its Response in Opposition

to the Garnishees' Motion to Compel Discovery (Docket No. 421) (the "Garnishees' Motion").

HOU:2590711.3

**Introduction**

1.     The six requests for production that are the subject of the Garnishees' Motion are focused on two areas of inquiry: (a) other sources of collection for FG Hemisphere's judgment against the Republique du Congo ("Congo"); and (b) the acquisition by FG Hemisphere of the debt owed by the Congo which underlies the judgment against the Congo.

2.     As more particularly explained below, neither area of inquiry is reasonably calculated to lead to the discovery of admissible evidence regarding the material issues in dispute in this case. Thus, the Garnishees are not entitled to such discovery. Indeed, the Garnishees' true motivation for seeking this information is apparently to use it in a public relations campaign in which they (and their parent, Perenco) seek to annoy, embarrass, or harass FG Hemisphere and publicly question the rulings of this Court and the Fifth Circuit -- a patent abuse of the discovery process.

3.     Moreover, the Garnishees mischaracterize FG Hemisphere's responses to their discovery requests and try to create issues where none exist. Accordingly, the Garnishees' Motion should be denied in its entirety.

**The Documents Sought By Garnishees Have No Relevance To The Material Issues In Dispute In This Case.**

4.     As explained above, the six requests for production that are the subject of the Garnishees' Motion are focused on two areas of inquiry: (a) other sources of collection for FG Hemisphere's judgment against the Congo; and (b) the acquisition by FG Hemisphere of (including the consideration paid for) the debt owed by the Congo which underlies the judgment against the Congo obtained by FG Hemisphere. *See* Garnishees' Motion, p. 2 (describing how "documents sought by Garnishees fall into two general categories").

5.     Neither area of inquiry has any relevance to the material issues in dispute in this case and thus, the Garnishees are not entitled to such discovery.  While the Garnishees attempt to justify their document requests by asserting that they relate to the appropriateness of injunctive relief against the Garnishees in favor of FG Hemisphere (in particular, with respect to the irreparable harm that must be suffered by FG Hemisphere in the absence of an injunction and the balancing of hardships), the fact of the matter is that the injunction has already been granted pending a final determination on the merits of the garnishment writs.  *See* Docket No. 282 (September 19, 2005 Memorandum and Order).[1]

6.     Moreover, the Garnishees ignore that the injunction granted in this case was supported by the Uniform Fraudulent Transfer Act as adopted in Texas ("UFTA") and based on the proposed fraudulent transfer *by the Garnishees* and FG Hemisphere's status as a *creditor of the Garnishees*.  *See* TEX. BUS. & COM. CODE ANN. § 24.001 et seq.  To put it simply, the injunction under the UFTA has to do with FG Hemisphere's claims against the Garnishees and whether the proposed transfer by the Garnishees would impede FG Hemisphere's ability to recover from the Garnishees on those claims.  While FG Hemisphere's judgment against the Congo was certainly a precursor of this post-judgment garnishment proceeding (and thus, FG Hemisphere's claims against the Garnishees) -- and while FG Hemisphere's ability to recover on that judgment through this garnishment proceeding from the Garnishees would certainly be impacted if the Garnishees effected the fraudulent transfer of their working interests, the judgment against the Congo and FG Hemisphere's acquisition of the underlying debt of the

---

[1] In fact, as indicated on the face of the Garnishees' document requests, the Garnishees requested the documents on August 16, 2005 "[i]n conjunction with Plaintiff's request that the Court extend the [15 day] preliminary injunction contained in the Memorandum and Order, dated August 12, 2005," which extension was subsequently granted pursuant to the September 19, 2005 Memorandum and Order.  *See* Garnishees' Motion, Ex. A.

3

Congo otherwise have no bearing under the applicable UFTA standards for injunctive relief vis-à-vis the Garnishees. Rather than repeat the applicable standards which have already been extensively briefed by FG Hemisphere, FG Hemisphere incorporates its prior briefing by reference. *See* Docket No. 249 (Reply By FG Hemisphere Associates, L.L.C. In Further Support Of Its Motion For Entry Of Order Requiring Garnishees To Deposit Proceeds Of Proposed Sale Of Interests In The Yombo Field Into The Registry Of The Court, pp. 9-14) and Docket Nos. 263 and 264 (FG Hemisphere's Emergency Motion for Extension of Injunction and Response Opposition to Garnishees' Motion for Reconsideration and to Vacate Preliminary Injunction, pp. 5-11).[2]

7.      Stated another way, FG Hemisphere was never required under the UFTA to show that it will be unable to collect on its *judgment against the Congo* from any source in the absence of the injunction or that its interest or investment in the *judgment against the Congo* outweighed the hardship imposed on the Garnishees.  Instead, FG Hemisphere merely had to make a showing with respect to the applicable UFTA standards for injunctive relief, including a showing as to the impairment of its *claims* (however disputed, unliquidated, or contingent they may be) *against the Garnishees* and the elements of a fraudulent transfer under the UFTA -- which showing FG Hemisphere made and this Court found by a preponderance of the evidence.[3]  By arguing

---

[2] Notably, this briefing does not include a claim by FG Hemisphere that it "has no other source for collection of its judgment against the Congo" as the basis for the UFTA injunction, despite the Garnishees' characterization on page 4 of their Motion to Compel. In addition, it is notable that this Court referred to the proposed fraudulent transfer as "likely render[ing] FG Hemisphere unable to collect monies owed to it by Defendant Republique du Congo ***and by Garnishees***" in its September 19, 2005 Memorandum and Order (Docket No. 282) (emphasis added).  Yet, the Garnishees conveniently chose to use ellipsis and omit the emphasized language when they quoted from this portion of the Court's opinion on page 4 of the Garnishees' Motion.

[3] As the Court will recall, the Garnishees admitted that they were seeking to transfer their "principal assets," which are "virtually the entirety of Garnishees' liquid assets," in a shell game transaction in which the Garnishees would receive no proceeds.  *See* Docket No. 240 (Garnishees' Preliminary Response, page 6); Docket No. 236 (Confidential Declaration Filed Under Seal), Ex. 2

otherwise now, the Garnishees contradict what they themselves previously stated when they sought reconsideration of the August 12, 2005 Memorandum and Order and claimed that "FG Hemisphere has failed to show how an order stopping the sale will have any effect whatsoever on its ability to collect a *potential money judgment against the Garnishees in this garnishment action.*" *See* Docket Nos. 254 and 255 (Garnishees' Motion for Reconsideration and to Vacate Preliminary Injunction, p. 22) (emphasis added). Accordingly, the Garnishees' sole justification for the requested discovery (*i.e.* that it is relevant to the injunctive relief against the Garnishees) fails, and the Garnishees' Motion should be denied.

8.   In addition, discovery regarding FG Hemisphere's prejudgment acquisition of the underlying Congolese debt is irrelevant because FG Hemisphere did obtain an undisputed judgment against the Congo. Thus, while FG Hemisphere may be a secondary holder of the Congo's debt, FG Hemisphere is the original plaintiff and holder of the judgment against the Congo. *See*, *e.g.* Docket No. 248, Exhibit C (Judgment). The Garnishees therefore cannot challenge what has been finally determined and is now law of the case -- the fact that FG Hemisphere is owed and entitled to be paid in excess of $151,952,486.23 pursuant to a New York judgment that has been domesticated in Texas. To the extent the amount paid by FG Hemisphere for the underlying, pre-judgment debt had any relevance, that relevance ended when FG Hemisphere's rights were determined and merged into the judgment. And, even if FG Hemisphere had not obtained judgment creditor status, the law simply does not recognize a distinction between original creditors and secondary holders or otherwise accord secondary

---

(PER 0018566-0018567) (for explanation of funding of proposed sale). And, the Garnishees also stipulated that the proposed transfer was not in exchange for reasonably equivalent value and that the requisite intent for a fraudulent transfer existed. *See* Transcript (August 24, 2005), 55:22-56:2 (Docket No. 268).

holders fewer rights because they purchased the debt at a discount. *See, e.g.*, *Capitol Resource Funding v. American Way, Inc.*, 860 F. Supp. 486, 489 (N.D. Ill. 1994) (assignee was entitled to recover entire amount due even though it had advanced lesser amount to seller in exchange for assignment). Moreover, the importance of a well-developed secondary market, in particular in the context of foreign debt, and the need to protect that market, have been recognized. *See Elliot Associates, L.P. v. Banco De La Nacion*, 194 F.3d 363, 380 (2d Cir. 1999) (describing how the existence of the "well-developed market of secondary purchasers of defaulted sovereign debt" provides "incentives for primary lenders to continue to lend to high-risk countries"; thus, refusing to interpret a statute to bar suit by secondary holder when such an interpretation would disrupt and perhaps destroy the secondary market). Notably, not one of the seven cases cited by the Garnishees on the need to the consider the amount invested in the asset (*see* Garnishees' Motion, p. 9) deals with an injunction under the UFTA, the collection efforts of a judgment creditor, or any purported need to examine the creditor's prejudgment acquisition of the underlying debt. The Garnishees are therefore not entitled to any discovery regarding FG Hemisphere's prejudgment acquisition of the debt which underlies the now undisputed judgment against the Congo.

### The Requested Documents Not Only Have No Relevance, But They Are Being Sought For An Improper Purpose.

9. The true motivation for the discovery sought by the Garnishees seems to be directed at trying the matters at issue in this case in the court of public opinion. Since this Court's ruling in April 2006 on the Garnishees' request for "clarification" as to their obligations under the garnishment writs, counsel for the Garnishees have attempted to take their side of the story to the media. *See* Ex. 1 hereto (press clippings quoting Garnishees' of counsel, Andrew B. Derman). Indeed, Perenco and the Garnishees or their representatives have apparently created a

website for the dissemination of their position. *See* Ex. 2 hereto (excerpts from http://www.threattooil.com, which includes additional press clippings quoting Mr. Derman). In addition, Mr. Derman has held conferences in New York, Washington and Houston inviting "Friends and Colleagues" to hear criticism of prior rulings by this Court and the Fifth Circuit in the actions by creditors such as FG Hemisphere. *See* Ex. 3 hereto (email from Andrew B. Derman and invitation to conference). Though the exact purpose for such criticism is somewhat unclear, the true purpose for which the Garnishees seek this discovery is absolutely clear. They do not seek to discover information that is reasonably calculated to lead to the discovery of evidence in this case. Instead, they seek this discovery to bolster their public relations campaign and attempt to annoy, embarrass and oppress FG Hemisphere. To ascertain the Garnishees' true purpose in this discovery, one need look no further than Mr. Derman's use of the term "Vulture Funds" to characterize FG Hemisphere's business activities. *See* Ex. 3 at p. 2. This Court should not lend its help to Garnishees' efforts to publicly criticize the legitimate activities of FG Hemisphere and this Court, and thus this Court should deny the Garnishees' Motion in its entirety.[4]

### Even if FG Hemisphere's Other Collections Efforts Were Relevant (Which They Are Not), FG Hemisphere Has Properly Responded To The Document Requests

10. Assuming *arguendo* that FG Hemisphere's other collection efforts were relevant, the fact that those efforts, as well as those of the other creditors of the Congo (including the intervenors in this case and Kensington International Limited) have been unsuccessful cannot

---

[4] Indeed, in addition to denying the Garnishees' Motion, this Court has the ability, under Federal Rules of Civil Procedure, to "make any order which justice requires to protect a party or a person from annoyance, embarrassment, oppression, or undue burden or expense," including ordering that "disclosure or discovery not be had." Fed. R. Civ. P. 26(c)(1). FG Hemisphere reserves the right to seek further relief from this Court to protect it from the Garnishees' tactics.

7

seriously be in dispute. *See* Declaration of Keith Fogerty (Ex. 4 hereto) ("Fogerty Decl."); *Kensington International Limited v. Republic of the Congo*, 2005 WL 3199335 (QBD (Comm Ct)), [2005] EWHC 2684.[5]  This is especially true given the sham entities, false documents, and other schemes and machinations that have been utilized by the Congo and SNPC and their representatives for the purpose of evading the efforts of the Congo's creditors, as expressly recognized by the British Court in *Kensington*.

11.  In any event, FG Hemisphere did not "fail to reveal" other collection efforts as alleged by Garnishees on page 3 of their Motion.  The other proceedings referenced in footnote 1 of the Garnishees' Motion were simply proceedings in which the judgment was registered in 2002 or 2003 and no other action was taken as reflected by the Garnishees' own Exhibit D to the Garnishees' Motion. The facts surrounding these proceedings and FG Hemisphere's unsuccessful collection efforts to date with respect to the Congo are more particularly explained in the Fogerty Decl. which is attached hereto and incorporated herein as Ex. 4.

12.  As explicitly set forth in FG Hemisphere's discovery responses, FG Hemisphere has offered to make certain New York documents "available for inspection and copying at a mutually convenient time at the offices of Andrews Kurth." FG Hemisphere stands on that offer and should not be compelled to copy, bates-label, and deliver documents to Vinson & Elkins as apparently demanded by Garnishees.

---

[5]  A copy of the *Kensington* decision as available on Westlaw was attached as Exhibit 1 to FG Hemisphere's Brief in Support of Imposition of Bonding Requirements in Connection with Anticipatory Violation of Court's Garnishment Writs (Docket No. 398).  Exhibit A to the Fogerty Decl. also includes a copy of the decision as signed by the British Judge (as Exhibit D).

13. With respect to the French proceeding that was disclosed in FG Hemisphere's discovery responses[6] but as being subject to a confidentiality request, FG Hemisphere's French attorneys are currently re-examining the confidential status of such documents. However, subsequent to FG Hemisphere's discovery responses, FG Hemisphere obtained an adverse ruling in that case (which is now on appeal before la Cour d'Appel de Paris at Case No. RG: 20060593). *See* Fogerty Decl. In any event, such documents should not be discoverable for the reasons explained in ¶¶ 4-8 above.

### FG Hemisphere Should Not Be Required To Provide A Privilege Log Unless and Until Its Scope/Relevancy Objections Are Overruled

14. In addition to the various objections to the discovery requests, FG Hemisphere has asserted that certain documents are protected from discovery based on privilege or other confidentiality requirements. The Garnishees have asserted that FG Hemisphere should be compelled to identify documents claimed as privileged and provide sufficient information to enable Garnishees to evaluate the claim of privilege.

15. In response to discovery requests by FG Hemisphere, the Garnishees have consistently taken position that they should not be required to produce a privilege log until their relevancy/scope objections are resolved. *See e.g.* Docket No. 239 (Garnishees' Response to Plaintiffs' Motion to Compel Production of Certain Documents, p. 16). To the extent FG Hemisphere's objections to the document requests are not sustained and the discovery requests at issue are found to seek relevant documents within the proper scope of discovery, FG Hemisphere

---

[6] *FG Hemisphere Associates, L.L.C. v. BNP Paribas*; Case No. RG: 05/83061 in front of the Execution Judge of the Tribunal de Grande Instance de Paris.

HOU:2590711.3

only asks for the same treatment -- a period of time to assert privileges and confidentiality requirements and prepare a privilege log after such a scope/relevancy determination is made.

WHEREFORE FG Hemisphere requests that the Court deny the Garnishee's Motion and for such other and further relief as is just.

                          Respectfully submitted,

                          /s/ Andrew J. Jefferson, Jr. by JMG
                          Andrew L. Jefferson, Jr.
                          Texas Bar No. 10610000
                          1314 Texas Street, Suite 500
                          Houston, Texas 77002-3513
                          (713) 227-7006
                          (713) 227-7260 Facsimile

                          ATTORNEYS FOR FG HEMISPHERE
                          ASSOCIATES, L.L.C.

Of Counsel:

ANDREWS KURTH LLP
Dillon Ferguson
Texas Bar No. 06911700
Jennifer M. Gore
Texas Bar No. 00796655
600 Travis, Suite 4200
Houston, Texas 77002
(713) 220-4200
(713) 220-4285 Facsimile

SIDLEY AUSTIN LLP
Robert N. Hochman
Illinois Bar No. 6244222
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-2936
(312) 853-7036 Facsimile

HOU:2590711.3

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response was served on the following parties, as indicated below, on this 5th day of July, 2006.

/s/  Jennifer M. Gore

**COUNSEL FOR GARNISHEES:**
VINSON & ELKINS, LLP
Guy S. Lipe
2300 First City Tower
1001 Fannin Street
Houston, TX 77002-6760
**VIA HAND DELIVERY**

THOMPSON & KNIGHT LLP
Andrew B. Derman
1700 Pacific Avenue, Suite 3300
Dallas, Texas 75201
**VIA OVERNIGHT DELIVERY**

THOMPSON & KNIGHT LLP
Eleanor H. Hodges
333 Clay St., Suite 3300
Houston, Texas 77002
**VIA HAND DELIVERY**

**COUNSEL FOR DEFENDANT**
**REPUBLIQUE DU CONGO:**
CLEARY GOTTLIEB STEEN & HAMILTON
Boaz Morag
One Liberty Plaza
New York, NY 10006
**VIA OVERNIGHT DELIVERY**

**COUNSEL FOR INTERVENORS,**
**AF-CAP, INC. AND WALKER INTERNATIONAL HOLDINGS LIMITED:**
GREENBERG TRAURIG, LLP
Roland Garcia
Arthur L. Schechter
L. Bradley Hancock
1000 Louisiana, Suite 1800
Houston, TX 77002
**VIA HAND DELIVERY**
**COUNSEL FOR INTERVENOR,**

HOU:2590711.3

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, P.A.:
FIGARI & DAVENPORT, L.L.P.
Ernest E. Figari, Jr.
Dennis M. Lynch
Lance V. Clack
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202-3796
**VIA OVERNIGHT DELIVERY**

and

SULLIVAN & CROMWELL LLP
Mark F. Rosenberg
125 Broad Street
New York, New York 10004
**VIA OVERNIGHT DELIVERY**